UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
In re                                          <u>MEMORANDUM & ORDER</u>
                                               19-CV-2010(JS)
JOE'S FRIENDLY SERVICE & SON INC.,
d/b/a THATCHED COTTAGE AT THE BAY,             Chapter 7
                                               14-BK-70001(REG)

                        Debtor.
---------------------------------------X
In re

THATCHED COTTAGE LP,                           Chapter 7
                                               14-BK-70002(REG)

                        Debtor.
---------------------------------------X
BETHPAGE FEDERAL CREDIT UNION and
BUSINESS SERVICES GROUP, LLC,

                 Plaintiffs/                    Adversary Proceeding
                 Appellees                      16-AP-8035(REG)


         -against-

THE TOWN OF HUNTINGTON,
JOSEPH F. CLINE, INDIVIDUALLY,
RICHARD VACCHIO, INDIVIDUALLY, and
TERENCE "TERRY" MCNALLY, INDIVIDUALLY


                 Defendants/
                 Appellants.
---------------------------------------X

APPEARANCES
For Plaintiffs/
     Appellees:    Richard J. McCord, Esq.
                   John M. Wagner, Esq.
                   Certilman Balin Adler & Hyman, LLP
                   90 Merrick Avenue
                   East Meadow, New York 11554


For Defendants/
     Appellants:   Gerard DiConza, Esq.
                   Lance Aaron Schildkraut, Esq.
                   Archer & Greiner, P.C.
                   630 Third Avenue, Seventh Floor
                   New York, New York 10017

SEYBERT, District Judge:

On April 4, 2019, Appellants Joseph F. Cline ("Cline"), Richard Vacchio ("Vacchio"), and Terence "Terry" McNally ("McNally") (collectively, "Appellants")[1] filed an appeal from Judge Robert E. Grossman's March 21, 2019 decision denying Appellants summary judgment based on the defense of qualified immunity (the "Appeal") in <u>Bethpage Federal Credit Union et al. v. Town of Huntington et al.</u>, No. 16-AP-8035, (Bankr. E.D.N.Y.) (Grossman, Bankr. J.), an adversary proceeding removed to the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") (the "Adversary Proceeding"). (Appeal, D.E. 1.[2]) Currently pending before the Court is a motion to dismiss the Appeal filed by Appellees Bethpage Federal Credit Union ("BFCU") and Business Services Group, LLC ("BSG") (together, "Appellees") on the basis that this Court lacks jurisdiction to hear the Appeal and that Appellants waived the defense of qualified immunity (the "Motion to Dismiss"). (Mot., D.E. 4.) Also before the Court is Appellants' motion to stay the Adversary Proceeding and trial, scheduled for December 9, 2019, pending the outcome of this Appeal (the "Stay Motion.") (Stay Mot., D.E. 18.)

---

[1] The Town of Huntington (the "Town") is a co-defendant in the Adversary Proceeding but does not take part in this Appeal.

[2] The first time the Court cites to a document, the location (docket entry) will be provided, thereafter, only the document title and page numbers/paragraph numbers will be provided.

For the following reasons, the Bankruptcy Court's decision denying Appellants summary judgment on qualified immunity with respect to Appellees' procedural due process claim is AFFIRMED as stated below (Appeal, D.E. 1), the Bankruptcy Court's denial of summary judgment (and thus qualified immunity) to Appellants on Appellees' substantive due process and equal protection claims is DISMISSED for lack of jurisdiction (Mot., D.E. 4), and Appellants' Stay Motion (D.E. 18) is DENIED as moot.

<u>BACKGROUND</u>

This Memorandum and Order incorporates by reference the detailed factual and procedural background provided by Judge Grossman in his Decision denying Appellants' motion for summary judgment.[3] (<u>See</u> Bankr. Decision, Suppl. Ex. 2, D.E. 16-2.) The Court presumes the parties' familiarity with the facts.

I.   <u>The Bankruptcy Proceedings</u>

On or about January 2, 2014, Thatched Cottage LP ("Cottage LP") and Joe's Friendly Service & Son Inc. d/b/a Thatched Cottage at the Bay ("Joe's Friendly") (together, "Debtors") filed separate voluntary petitions pursuant to Chapter 11 of the Bankruptcy Code. (<u>In re Joe's Friendly</u>, No. 14-BK-70001 (Bankr. E.D.N.Y.) (Grossman, Bankr. J.) and <u>In re Thatched Cottage LP</u>, No.

---

[3] Judge Grossman presided over the Debtors' bankruptcy proceedings, and all related proceedings, and therefore has extensive familiarity with the facts giving rise to the instant Appeal.

14-BK-70002 (Bankr. E.D.N.Y.) (Grossman, Bankr. J.) (the "Bankruptcy Proceedings"). The Bankruptcy Proceedings were jointly administered.

## II. Procedural and Factual Background

Non-party Ralph Colamussi ("Colamussi"), the principal of both Debtors, had an interest in property and an adjacent lot located at 445 East Main Street, Centerport, New York (the "Property"). (Appellants' 56.1 Stmt., Suppl. Ex. 8, D.E. 16-8, ¶¶ 3, 18; Appellees' 56.1 Stmt., Suppl. Ex. 10, D.E. 16-10, at ECF pp. 2-23, ¶ 3.) Joe's Friendly, through Colamussi, owned real property located on the Property called the "Thatched Cottage". (Appellants' 56.1 Stmt., D.E. 16-8, ¶ 5; Appellees' 56.1 Stmt., D.E. 16-10, ¶ 5.) Colamussi, through Cottage LP, owned and operated the Thatched Cottage for many years. (Appellees' Counter-Stmt., Suppl. Ex. 10, D.E. 16-10, at ECF pp. 24-29, at 26-27; Am. Compl., Suppl. Ex. 1, D.E. 16-1, ¶ 14.)

Prior to the Bankruptcy Proceedings, Debtors obtained a loan from BFCU which was secured by a mortgage on the Thatched Cottage and personally guaranteed by Colamussi. (Appellees' Counter-Stmt., at ECF p. 27.) Debtors defaulted on the loan and on September 6, 2013, BFCU commenced a foreclosure action against the Thatched Cottage. (Appellees' Counter-Stmt., at ECF pp. 28-29.) On January 2, 2014, Debtors commenced the Bankruptcy Proceedings.

Colamussi continued to manage the Thatched Cottage until April 2014, when at Debtors' request, the Bankruptcy Court approved the retention of Hospitality Credit, LLC, managed by Gino Scotto ("Scotto"), to run the operations at the Thatched Cottage. (Appellees' Counter-Stmt., at ECF p. 29.) At that time, Colamussi's mental health was "called into question." (Bankr. Decision, at 5.) The Thatched Cottage continued to operate as a debtor-in-possession, serving as a wedding venue and accepting deposits for future events through October 2014. (Bankr. Decision, at 4-5; Appellees' Counter-Stmt., at ECF p. 30.)

On June 3, 2014, the Town inspected the Thatched Cottage and on August 18, 2014, the Town issued the Thatched Cottage an occupancy and assembly permit, signed by Appellants McNally (the Town's Chief Fire Marshal) and Cline (the Town's Director of the Department of Engineering Services). (Permit and Inspection, Suppl. Ex. 34, D.E. 28-7.) On July 3, 2014, the Bankruptcy Court appointed a trustee (the "Trustee") who, on July 24, 2014, sought authorization for the sale of the Property at an auction. (No. 14-BK-70001, Bankr. D.E. 165 and 192.) According to Appellees, Colamussi, through the Town and Town officials, sought to impede any sale of the Thatched Cottage to a third-party purchaser. Colamussi expressed that no one, other than himself or Scotto, should own or operate the Thatched Cottage and blamed the Bankruptcy Trustee and BFCU for "ruining his life." (Appellees'

Counter-Stmt., at ECF pp. at 35-36.) Colamussi testified that he would have been "happy" if Scotto purchased the property because they had an "agreement that [they] were going to combine [a neighboring restaurant], that [Colamussi] owned, with the Thatched Cottage. . . . [i]t was going to be one complex, all run altogether" and Colamussi and Scotto would be "50/50 partners." (Colamussi Dep., No. 16-AP-8035, McCord Decl., Ex. 2, Bankr. D.E. 78-6, 115:24-116:15; Appellees' Counter-Stmt., at ECF p. 30.)

On August 11, 2014, the Bankruptcy Court approved the terms and conditions of the sale for the Property ("Terms and Conditions"). (Aug. 11, 2014 Order, No. 14-BK-70001, Bankr. D.E. 210.) A public auction took place on September 24, 2014 and Yama Raj ("Raj") was the highest bidder and BFCU was the second highest bidder. (Appellees' Counter-Stmt., at ECF p. 31.) Thereafter, on October 6, 2014, the Thatched Cottage closed business and operations. (Appellees' Counter-Stmt., at ECF p. 32.) At that time, Town officials were aware that the Thatched Cottage was closed and no longer operational. (Appellees' Counter-Stmt., at ECF p. 31.)

On October 15, 2014, the Bankruptcy Court confirmed the Trustee's sale to Raj and the Trustee consented to extend the closing date to November 24, 2014. (Oct. 16, 2014 Order, No. 14-BK-70001, Bankr. D.E. 247; Appellees' Counter-Stmt., at ECF p. 32.) The record indicates that Raj, Raj's attorneys and

representatives, and Town officials were in contact with the Town to discuss the sale of the Property and necessary improvements. Around the time that Raj was approved to purchase the Property, the Town, for the first time in many years, raised an objection to the encroachment of Property onto land owned by the Town and noted that a "multitude of violations" must be "resolved before any other permits can be issued."  (Oct. 9-14, 2014 Email Chain, No. 16-AP-8035, DiConza Decl., Ex. 24, Bankr. D.E. 70-18.)

On October 16, 2014, Steve Haber ("Haber"), a Town Planning Committee employee, met with Raj's representatives to discuss "minor renovations" to the Property.  (Oct. 9-14, 2014 Email Chain, No. 16-AP-8035.)  Another meeting took place on October 28, 2014 with Raj, Raj's representatives, and Town officials, including Deputy Town Supervisor Patricia Del Col ("Del Col").  (See Oct. 16 & 24, 2014 Emails, No. 16-AP-8035, DiConza Decl., Ex. 26 and 27, Bankr. D.E. 70-18.)  The day before the October 28, 2014 meeting, Betty Walsh ("Walsh"), an employee at the Town Supervisor's Office, provided Raj's representatives with a memorandum listing discussion items that were to be addressed at the meeting.  (Oct. 27, 2014 Email, No. 16-AP-8035, McCord Decl., Ex. 40, Bankr. D.E. 79-5; Oct. 24, 2014[4] Memo., No. 16-AP-8035, McCord Decl., Ex. 52, Bankr. D.E. 79-17.)

---

[4] At his deposition, Thomas Glascock, the Deputy Town Attorney, testified the document should be dated October 24, 2014 and not

The memorandum detailed various issues at the Property but did not address any concerns regarding the structure or safety of the Thatched Cottage. (Oct. 24, 2014 Memo., No. 16-AP-8035, McCord Decl., Ex. 52, Bankr. D.E. 79-17.) In response, Raj's representative expressed Raj's desire to form an agreement to "reopen the previously operating facility," that it was not economically feasible to keep the Thatched Cottage closed for an "extended time," and that "[c]ertainly except for [Colamussi's] financial problems, [Colamussi] would still be operating there." (Oct. 27, 2014 Email, No. 16-AP-8035.) Appellant Cline testified that the parties did not discuss structural or safety concerns of the Thatched Cottage at the October 24, 2014 meeting. (June 1, 2017 Cline Dep. Part 1, No. 16-AP-8035, DiConza Decl., Ex. 4, Bankr. D.E. 70-3, 37:10-38:10.)

Thereafter, many news articles were published and "Concerned Citizens of Centerport" wrote letters to the Town regarding the safety and alleged hazardous conditions at the Property. (Bankr. Decision, at 7-9; Concerned Citizens Letters, No. 16-AP-8035, McCord Decl., Ex. 64, Bankr. D.E. 79-29.) Appellant Cline testified that "nothing was done" to investigate the claims alleged by the "Concerned Citizens." (Feb. 4, 2016 Cline Dep., Suppl. Ex. 3, D.E. 16-3, 37:16-21.)

_____

November 24, 2014. (Glascock Dep., Suppl. Ex. 16, D.E. 16-16, 57:17-58:5.)

On November 13, 2014, Colamussi stopped by the Town Fire Marshal's office and spoke with Appellant McNally regarding "a structural defect" at the Thatched Cottage. (June 9, 2017 McNally Dep., No. 16-AP-8035, McCord Decl., Ex. 10, Bankr. D.E. 78-30, 44:13-45:20.) Colamussi brought certain documents that reflected alleged unsafe conditions at the Thatched Cottage, including three engineering reports (the "Colamussi Reports"),[5] letters from architects, Colamussi's personal emails with the Trustee and auctioneer, newspaper articles, and copies of the "Concerned Citizens" letters. (June 9, 2017 McNally Dep., No. 16-AP-8035, McCord Decl., 47:10-22; Dec 3, 2014 Town Memo., Suppl. Ex. 36, D.E. 79-21.) Appellant Cline overheard the conversation between Colamussi and McNally and took the Colamussi Reports. (June 9, 2017 McNally Dep., No. 16-AP-8035, 45:21-24, 48:15-49:6.)

On November 14, 2014, Town employees circulated the Colamussi Reports. (Nov. 14-17, 2014 Town Email Chain, No. 16-AP-8035, McCord Decl., Ex. 43, Bankr. D.E. 79-8.) In a letter dated November 17, 2014, Raj's attorney, John Breslin ("Breslin"),

_____

[5] There is evidence that Scotto commissioned Galli Engineering, P.C. to prepare at least two of the Colamussi Reports (the "Galli Reports"). (Appellees' Counter-Stmt., at ECF p. 49.) Scotto reviewed drafts of the Galli Reports and asked Galli Engineering to include "strong" language with respect to "safety concerns" at the Property. (Appellees' Counter-Stmt., at ECF p. 50.) The Galli Reports included a sentence that "possible loss of life is a concern." (Appellees' Counter-Stmt., at ECF p. 50.)

informed Raj that the Town received an engineering report that indicated structural deficiencies at the Property and that the Town could not allow Raj to "re-open [the Thatched Cottage] until [the Town] [was] sure that the building is structurally sound" which could be accomplished by proof from another engineer or by "inspections made by the Town inspectors." (Nov. 17, 2014 Letter, Suppl. Ex. 7, D.E. 16-7.)  Breslin also wrote that the report "overstates the issues and may be even worse but the Town will need to cover itself to make sure it is safe." (See Nov. 17, 2014 Letter.)

On November 17, 2014, Town employee Betty Walsh emailed Haber that she "[j]ust got off the phone with [Cline and t]he building is to be placarded.  You know there has been so much hearsay back and forth about this place and [Colamussi] and the community and the damn hurricane," that "the report does shed a credible light," and that she wonders if Raj will "find a company that will come in and prepare a mitigation plan or walk away." (See Nov. 14-17, 2014 Town Email Chain, No. 16-AP-8035.)  On November 17, 2014, Raj commissioned and acquired two reports from Tauscher Cronacher Professional Engineers ("Tauscher") that indicated in substantial part that "there are no indications of structural movement or instability caused by . . . [Hurricane] Sandy or other storms" (the "Tauscher Reports").  (Tauscher Inspection Report, No. 16-AP-8035, McCord Letter, Ex. A, Bankr.

D.E. 88-1.)  The parties dispute whether the Town had notice of the Tauscher Reports that "negate the findings of the Colamussi Reports" or whether the Town received and disregarded the findings in the Tauscher Reports.  (See Bankr. Decision, at 15.)

In a redacted email chain dated November 18, 2014,[6] Breslin emailed Thomas Glascock (the Deputy Town Attorney) noting that Breslin and Raj "believe th[e] items in the [Colamussi Reports] are greatly overstated but we share the [T]own's concern in making sure there are no deficiencies [at the Thatched Cottage]."  (Nov. 18, 2014 Town Email, No. 16-AP-8035, McCord Decl., Ex. 47, D.E. 79-12.)  Seven minutes later, Walsh forwarded the email to Del Col and wrote "I am almost afraid to ask.  What does [Colamussi] want?"  (See Nov. 18, 2014 Town Email, No. 16-AP-8035.)  In response, Del Col wrote, "[s]aid we should be doing something about Thatched Cottage.  I told [an assistant] to tell him we were taking care of it."  (See Nov. 18, 2014 Town Email, No. 16-AP-8035.)  Both Walsh and Del Col do not recall any of the circumstances surrounding the November 18, 2014 email.  (June 12, 2017 Walsh Dep., No. 16-AP-8035, McCord Decl., Ex. 11, Bankr. D.E.

---

[6] On November 5, 2019, the Bankruptcy Court granted Appellees' motion filed by order to show cause for an order compelling Appellants to produce all iterations and data of the November 18, 2014 email chain.  (Nov. 5, 2019 Order, No. 16-AP-8035, Bankr. D.E. 158.)

78-35, 101:19-104:5; Apr. 27, 2017 Del Col Dep., Suppl. Ex. 35, D.E. 28-8, 85:7-19.)

On November 20, 2014, Appellant Vacchio, the Town's Senior Building Inspector, posted a placard on the Thatched Cottage, which states, in substantial part:

> This Building is hereby declared unsafe and unfit for human habitation pursuant to the Code of the Town of Huntington.
>
> The Occupancy of this dwelling or any part thereof is unlawful.

(Placard, Suppl. Ex. 33, D.E. 29.)[7]

Appellants never provided Appellees with notice of their intent to placard the Property. Appellant Cline testified that the Town has never posted a placard without first conducting an inspection. (June 1, 2017 Cline Dep. Part 2, No. 16-AP-8035, Bankr. D.E. 70-4, 83:12-20.) Cline also testified that the placard posted at the Thatched Cottage was the only instance where the Town posted a placard on a property without first conducting its own inspection. (Feb. 4. 2016 Cline Dep., 16:10-21.) Cline

---

[7] The Placard explicitly states it was posted "pursuant to the Code of the Town of Huntington" (the "Town Code"). (See Placard.) However, there are conflicting emails, documents, testimony, and arguments as to whether the Placard was posted pursuant to the Town Code, the New York State Property Maintenance Code ("NYPMC") (see e.g., Dec. 3, 2014 Town Memo., Suppl. Ex. 36, D.E. 28-9,), the New York State Building Code (see Apr. 27, 2017 Del Col Dep., 71:15-72:9), or based on a general Town "duty" anytime there is a "structural defect" or a building that is not "fit for habitation" (Feb. 4, 2016 Cline Dep., 88:17-24).

testified that he determined to placard the Thatched Cottage in consultation with co-Appellants Vacchio and McNally although it was not "typical for [Cline] to be involved with placarding." (June 1, 2017 Cline Dep. Part 1, No. 16-AP-8035, Bankr. D.E. 70-3, 50:12-13, 52:4-13.) When pressed for details regarding the Town's placarding procedures, Del Col, the Deputy Town Supervisor who has worked for the Town in various capacities for over 30 years, testified she "could not recall" the number of placards placed on buildings "due to threats of public safety" but that "25 per year" seemed "high." (Apr. 27, 2017 Del Col Dep., 7:5-25, 63:16-65:22.)

Cline also testified that the "assessment concerning the [Property's] structural integrity" came only from the Colamussi Reports. (Feb. 4, 2016 Cline Dep., 85:8-17.) Cline further testified that Appellants' decision to post the placard was based upon a review of the Colamussi Reports, photographs, statements, and in consideration of the Appellants' obligations to protect the public. (June 1, 2017 Cline Dep. Part 1, No. 16-AP-8035, 53:3-21.) According to Cline, "there were very little ramifications" to posting the placard and that, even though the building was already "abandoned," if they did nothing, it would be "devastating" if someone was injured at the Property, especially in light of the Colamussi Reports which stated the Property posed a "risk to the public." (June 1, 2017 Cline Dep. Part 1, No. 16-AP-8035, 43:7-

23, 53:22-54:15.) Indeed, at the time of placarding, Cline testified that he understood that the Thatched Cottage had been "closed for weeks or months." (Feb. 4, 2016 Cline Dep., 88:11-16.)

Further, prior to posting the placard, Cline called Del Col even though it was not "in the course of normal business" to report placarding to Del Col and even though he "never made a phone call before [placarding] other than the Thatched Cottage." (June 1, 2017 Cline Dep. Part 1, No. 16-AP-8035, 50:14-20.) Cline also testified that the Town never sought to verify the Colamussi Reports and did not communicate with the authors of the Colamussi Reports until after the decision was made to placard the Property. (June 1, 2017 Cline Dep. Part 2, No. 16-AP-8035, 77:6-78:23.)

After the placard was posted, Cline drafted an internal memorandum, dated December 3, 2014, in response to a request from Councilman Mark Cuthberston to "prepare a summary of events leading up to the placarding of the Thatched Cottage." (Feb. 4, 2016 Cline Dep., 81:9-82:5.) The December 3, 2014 memorandum provided a timeline that incorrectly noted November 18, 2014 as the date Colamussi "dropped off a package" to the Fire Marshal's office which contained, among other things, the Galli Reports. (See Dec. 3, 2014 Town Memo.) Citing to the Galli Reports, Cline wrote that the "Town had a duty to act quickly to safeguard the occupants of [the Property]" pursuant to Section 107 of the New York Property

Maintenance Code (the "NYPMC").[8]  (See Dec. 3, 2014 Town Memo.)

Cline testified that after sharing a draft of the December 3, 2014

memorandum with the Fire Marshal, McNally, it was recommended that

Cline "include the section of . . . the property maintenance code."

(Feb. 4, 2016 Cline Dep., 83:13-22.)

Raj, the highest bidder, refused to close and defaulted

on the sale "because the property was not a waterfront facility"

as a result of an encroachment on Town property, an issue that the

Town previously ignored, and because Raj was "unaware of the total

uselessness of the building" prior to placarding.  (See Vacate and

Turnover Mot. Att'y Affirmation, No. 14-BK-70001, Bankr. D.E. 273-

1, Ex. 1, ¶¶ 3-4, 14.)[9]  Pursuant to the Terms and Conditions of

sale, after Raj's default, BFCU was required to take title to the

Thatched Cottage.  (Sale Order, DiConza Decl., Ex. 19, No. 16-AP-

8035, Bankr. D.E. 70-16.)

The Town and Appellees remained in contact between

January 2015 and April 2016.  After posting the placard, the Town

---

[8] The NYPMC is part of the State Uniform Fire Prevention and
Building Code.  (Appeal Br., D.E. 15, at 28.)

[9] On January 15, 2015, the Bankruptcy Court denied Raj's Deposit
Turnover Motion which asked the Bankruptcy Court to vacate the
sale and return his deposit.  (Jan. 15, 2015 Order, No. 17-BK-
70001, Bankr. D.E. 291.)  Raj appealed to the District Court and
on August 21, 2015, the District Court affirmed the Bankruptcy
Court's denial of the Deposit Turnover Motion.  See Raj v.
Barnard (In re Joe's Friendly Serv. & Son), 538 B.R. 618
(E.D.N.Y. 2015) (Spatt, J.).

issued a stop work order and suspended demolition activities at the Property. (June 1, 2017 Cline Dep. Part 2, No. 16-AP-8035, 89:21-90:22.) The Town permitted Appellees to perform "limited work" pursuant to the Town Code. (Jan. 6-7, 2015 Email Chain, No. 16-AP-8035, DiConza Decl., Ex. 53, Bankr. D.E. 70-39, at ECF pp. 5-7.) Appellants assert that Appellees "had access to the [P]roperty to show it to potential buyers" (Appeal Br., D.E. 15, at 24) however there is evidence that Appellees were not permitted to show the Property to prospective purchasers until the placard was removed (see Apr. 15-19, 2016 Email Chain and Apr. 19, 2016 Town Letter, No. 16-AP-8035, McCord Decl., Ex. 66, Bankr. D.E. 79-31). In the Fall of 2015, Appellees contracted to sell the Thatched Cottage but the sale did not go through. (Jan. 4-5, 2015 Email Chain, No. 16-AP-8035, DiConza Decl., Ex. 58, Bankr. D.E. 70-39, at ECF pp. 29-32.)

On March 10, 2016, the Town's lawyer emailed Appellees' counsel that "no one should be inside the [Thatched Cottage] or on top of the roof" unless structural defects are addressed by "[a] Professional Engineer or Architect saying it is safe in writing," or "[p]ermit plans submitted to department, permit issued, permitted work performed and CO'ed." (Mar. 10, 2016 Email Chain, No. 16-AP-8035, DiConza Decl., Ex. 59, Bankr. D.E. 70-39, at ECF pp. 33-36.) As such, on April 15, 2016, Appellees submitted an engineering report that "confirms that the building is in fact

structurally sound and poses no threat of collapse." (Apr. 15, 2016 Email, No. 16-AP-8035, DiConza Decl., Ex. 59, Bankr. D.E. 70-39, at ECF pp. 37-38; Report, No. 16-AP-8035, DiConza Decl., Ex. 60, Bankr. D.E. 70-39, at ECF pp. 39-62.) The Town removed the placard on April 19, 2016 (Apr. 19, 2016 Town Letter, No. 16-AP-8035, McCord Decl., Ex. 66, Bankr. D.E. 79-31, at ECF p. 12) and on July 5, 2016, Appellees entered into a contract to sell the Property, which closed on September 13, 2016. (July 5, 2016 Purchase and Sale Agreement, No. 16-AP-8035, McCord Decl., Ex. 67, Bankr. D.E. 79-32.)

III. <u>The Adversary Proceeding</u>

Appellees commenced the Adversary Proceeding in New York State Supreme Court, Suffolk County, on February 11, 2016, which Appellants removed to the Bankruptcy Court. (Notice of Removal, No. 16-AP-8035, Bankr. D.E. 1.) On August 12, 2016, Appellees filed an Amended Complaint (<u>see</u> <u>generally</u> Am. Compl.) alleging that (1) the Town, Appellants, Colamussi, and others orchestrated a plan to interfere with the sale of the Property including by, among other things, posting the placard (on an already closed building) and keeping the placard posted for approximately seventeen months, which effectively condemned the Property and prevented Appellees from entering the Property to perform necessary repairs and from showing the Property to real estate brokers and prospective purchasers (Appellees' Counter-Stmt., at

17

ECF p. 58); (2) Appellants failed to follow proper procedures in posting the placard (see generally Appellees' Counter-Stmt.; and (3) Appellants gave Colamussi preferential treatment to Appellees detriment (Appellees' Counter-Stmt., at ECF pp. 27-30, 32-48).[10]

IV.  The Adversary Proceeding Procedural History

On October 19, 2016, Appellants filed a motion to dismiss the Amended Complaint in the Bankruptcy Court arguing, among other things, that Appellants were entitled to absolute immunity. (Appellants' Mot. to Dismiss, No. 16-AP-8035, Bankr. D.E. 24., at 20.)  On December 5, 2016, the Bankruptcy Court issued an oral ruling denying Appellants' motion to dismiss in its entirety. (Dec. 5, 2019 Tr., No. 16-AP-8035, Bankr. D.E. 35; Dec. 12, 2019 Order, No. 16-AP-8035, Bankr. D.E. 34.)  On August 12, 2016, Appellees filed an Amended Complaint.  On December 27, 2016, Appellants filed an answer to the Amended Complaint, again asserting as an affirmative defense that "[Appellants] have no liability for the claims asserted in the Amended Complaint based

---

[10] The Thatched Cottage is a well-known establishment that has hosted Town events and functions.  (Appellees' Counter-Stmt., at ECF p. 33.)  Moreover, Colamussi has personal and professional connections with various Town officials, including his sister, sister-in-law, and father who have all worked in various Town positions.  (Appellees' Counter-Stmt., at ECF pp. 32-33.)  The record reflects that Colamussi often sought assistance from Town officials for structural, developmental, and rebuilding projects at the Thatched Cottage, FEMA issues after Hurricane Sandy, and with Colamussi's inability to pay bills.  (Appellees' Counter-Stmt., at ECF pp. 33-35).

upon the doctrine of absolute immunity." (Answer to Am. Compl., Suppl. Ex. 31, D.E. 28-4, at 22, ¶ 7; <u>see</u> <u>also</u> Aug. 5, 2016 Answer, No. 16-AP-8035, Bankr. D.E. 13, at 16.)

On January 23, 2017, Appellants filed a motion to withdraw the reference to the Bankruptcy Court (the "Motion to Withdraw"), which this Court denied on November 25, 2019.[11] (Order, No. 17-MC-0190, D.E. 14.) While the Motion to Withdraw was pending, the parties continued to litigate the Adversary Proceeding and engaged in extensive discovery. On July 31, 2017, Appellants filed their motion for summary judgment (Mot. Summ. J., No. 16-AP-8035, Bankr. D.E. 66), which Appellees opposed (Summ. J. Opp., No. 16-AP-8035, Bankr. D.E. 81). On January 29, 2018, the Bankruptcy Court reopened discovery for the parties to explore facts surrounding the Tauscher Reports.[12] (Order, No. 16-AP-8035, Bankr. D.E. 93.) The parties submitted supplemental briefs on April 13, 2018. (No. 16-AP-8035, Bankr. D.E. 100-106.)

Although the placard specifically reads to be posted "[p]ursuant to the Code of the Town of Huntington," Appellants argued below, and here, that the placard was posted pursuant to

---

[11] Defendants' Motion to Withdraw was initially assigned to Judge Arthur D. Spatt, who issued a recusal order on April 11, 2018. (D.E. 10.)

[12] The Tauscher Reports were not produced in discovery. Rather, Appellees discovered the existence of the Tauscher Reports during a deposition in a separate but related action. (<u>See</u> Bankr. Decision, D.E. 16-2 at 13-15.)

the NYPMC. (Mot. Summ. J., D.E. 16-9, at 30-31.) Appellants argued that the NYPMC permitted the Town to "placard property that it considered 'unsafe' or 'unfit for human occupancy'" without notice. (Summ. J. Br., No. 16-AP-8035, Bankr. D.E. 68, at 30-31.) According to Appellants, "[l]icensed engineers' reports," i.e., the Colamussi Reports, "indicated that the Thatched Cottage was unsafe" and therefore the decision to post the placard did not violate Appellees' constitutional rights because the NYPMC does not require notice. (Summ. J. Br., No. 16-AP-8035, at 31.)

On March 21, 2019, the Bankruptcy Court denied Appellants' motion for summary judgment in its entirety. (Bankr. Decision.) As relevant here, the Bankruptcy Court found Appellants' reliance on the NYPMC "misplaced" and held that "the process here should be measured under the Town Code" for purposes of the Bankruptcy Court's decision. (Bankr. Decision, at 18-19.)

The Bankruptcy Court further articulated that the "clearly established right" was to have the "Town employees adhere to the procedures established by the Town Code, and if [Appellants] believed that an 'emergency' existed, i.e., by virtue of the Colamussi Reports, then to follow the Town Code procedures for emergency circumstances." (Bankr. Decision, at 41.) The Bankruptcy Court concluded that issue of fact existed as to whether it was reasonable for the Town to "placard an already shuttered business based on unverified engineering reports, that procedures

pursuant to the Town Code were not followed because [Appellant Cline] was 'not aware of specifics of the Town Code,' and that [Appellants] maintained the placard for 17-months for reasons not apparent to [the] Court." (Bankr. Decision, at 42.) Thus, the Bankruptcy Court denied Appellants summary judgment on qualified immunity. (Bankr. Decision, at 42.)

On April 4, 2019, Appellants filed this Appeal solely arguing that Appellants are entitled to summary judgment on the ground of qualified immunity. On May 20, 2019, Appellees filed the Motion to Dismiss. On August 1, 2019, the Bankruptcy Court scheduled trial to start on December 9, 2019. (Pre-Trial Order, No. 16-AP-8035, Bankr. D.E. 140.) On June 3, 2019, Appellants opposed Appellees' Motion to Dismiss (Appellants' Opp., D.E. 5) and on September 20, 2019 filed the Stay Motion requesting that this Court stay the Adversary Proceeding and trial pending a determination of this Appeal (Stay Mot., D.E. 18).

<u>DISCUSSION</u>

Appellees argue that the Appeal should be dismissed because (1) Appellants waived the defense of qualified immunity and (2) the Court lacks subject matter jurisdiction to hear this Appeal because "the Bankruptcy Court determined that the Individual [Appellants] immunity claim so clearly depends on resolution of material facts in dispute that it cannot be decided as a matter of law." (Appellees' Mem. of Law, D.E. 4-1, at 2-4.)

Appellants oppose the Motion to Dismiss and argue that they did not waive the qualified immunity defense because it was asserted in their first motion for summary judgment and did not result in prejudice or unfair surprise to Appellees. (Appellants' Opp., ¶¶ 19-21.) Appellants further argue that the Court has jurisdiction over the Appeal because the Court has jurisdiction to hear appeals relating to whether: (1) Appellees were not deprived of any constitutionally protected property interests or rights, (2) Appellants did not violate any clearly established rights, and (3) the Town's and Appellants' conduct was reasonable. (See generally Appellants' Opp.)

I. Waiver

Appellees argue that Appellants waived the defense of qualified immunity because Appellants did not specifically assert the defense prior to summary judgment. (See Appellees' Mem. of Law, at 6-7; see also Answer to Am. Compl., at 22, ¶ 7 (asserting absolute immunity, and not qualified immunity, as an affirmative defense).) Appellants respond that they did not waive the qualified immunity defense because it was asserted in their first motion for summary judgment and did not prejudice or unfairly surprise Appellees. (Appellants' Opp., ¶¶ 19-21.)

The Court is not persuaded that Appellants waived their qualified immunity defense. Here, although Appellants did not assert the qualified immunity defense in their Answer or Answer to

the Amended Complaint, Appellants asserted the defense of qualified immunity in their first motion for summary judgment. (Summ. J. Br., at 37-39.)

The cases cited by Appellees are easily distinguishable. In Blissett v. Coughlin, 66 F.3d 531, 538-39 (2d Cir. 1995), the qualified immunity defense had been waived where defendants, although having "raised a general immunity defense" in an answer, "did not raise the issue of qualified immunity during the subsequent five years of pre-trial proceedings" or at trial. In McCardle v. Haddad, 131 F.3d 43, 52 (2d Cir. 1997), qualified immunity was waived where the defendant improperly raised the defense after the close of his case at trial, even though the defense was affirmatively asserted in an answer.

Here, Appellants raised the defense of qualified immunity during pre-trial proceedings, in their first motion for summary judgment before the Bankruptcy Court. Cf. McCardle, 131 F.3d at 52; Blisset, 66 F.3d at 538. The parties fully briefed and argued Appellants' qualified immunity defense. See Brown v. City of N.Y., 862 F.3d 182, 188 (2d Cir. 2017). Therefore, the Court does not find that Appellants waived qualified immunity as a defense.

II.  Qualified Immunity

    A.  Standard

        When determining whether a defendant is entitled to
qualified immunity, the Court must decide whether "the facts that
a plaintiff has alleged [ ] or shown [ ] make out a violation of
a constitutional right." Pearson v. Callahan, 555 U.S. 223, 232,
129 S. Ct. 808, 815–16, 172 L. Ed. 2d 565 (2009) (citing Saucier
v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272
(2001)).  The Court must also decide whether "the right at issue
was 'clearly established' at the time of defendant's alleged
misconduct." Id. (internal quotation marks and citation omitted).
The Court is "permitted to exercise [its] sound discretion in
deciding which of the two prongs of the qualified immunity analysis
should be addressed first in light of the circumstances in the
particular case at hand." Id. at 236, 129 S. Ct. at 818.

        "A right is clearly established if (1) the law is defined
with reasonable clarity, (2) the Supreme Court or the Second
Circuit has recognized the right, and (3) a reasonable defendant
[would] have understood from the existing law that [his or her]
conduct was unlawful." Anderson v. Recore, 317 F.3d 194, 197 (2d
Cir. 2003) (internal quotation marks and citation omitted; first
alteration in original).  "Although a conclusion that the [ ]
official's conduct was objectively reasonable as a matter of law
may be appropriate where there is no dispute as to the material

historical facts, if there is such a dispute, the factual question must be resolved by the factfinder." Taravella v. Town of Wolcott, 599 F.3d 129, 135 (2d Cir. 2010) (internal quotation marks and citation omitted).

B.   Jurisdiction

This Court has jurisdiction to review an interlocutory appeal of a denial of qualified immunity "'when the underlying issues raise only questions of law.'" Tooly v. Schwaller, 919 F.3d 165, 172 (2d Cir. 2019) (quoting Bryant v. Egan, 890 F.3d 382, 386 (2d Cir. 2018)). As outlined by the Second Circuit, "when a [ ] court rejects a defendant's assertion of qualified immunity on a motion for summary judgment because it concludes that the law the defendant allegedly violated was 'clearly established,' that order may be appealed immediately" and is subject to de novo review. Raspardo v. Carlone, 770 F.3d 97, 111–12 (2d Cir. 2014) (citing Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996)); Betances v. Fischer, 140 F. Supp. 3d 294, 301 (S.D.N.Y. 2015), aff'd, 837 F.3d 162 (2d Cir. 2016) ("Appealable matters involve 'disputes about the substance and clarity of pre-existing law,' not about 'what occurred or why an action was taken or omitted.'") (citation omitted); cf. Johnson v. Jones, 515 U.S. 304, 313–18, 115 S. Ct. 2151, 132 L. Ed. 2d 238 (1995) (holding that there is no appellate jurisdiction over a district court's denial of a defendant's motion for summary judgment where the defendant challenges whether the

plaintiffs have set forth sufficient evidence to create genuine issues of material fact).

If "a factual determination is a necessary predicate to the resolution of whether . . . immunity is a bar, review is postponed and" the appeal is dismissed. Tooly, 919 F.3d at 172 (internal quotation marks and citation omitted; ellipsis in original). Thus, an interlocutory appeal is only appropriate to determine whether the defendant is entitled to qualified immunity as a matter of law "'on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find.'" Id. (quoting Bolmer v. Oliveira, 594 F.3d 134, 141 (2d Cir. 2010)). "[W]here the district court denied immunity on summary judgment because genuine issues of material fact remained," jurisdiction exists to "determine whether the issue is material, but not whether it is genuine." Id. (quoting Bolmer, 594 F.3d at 140-41) (emphasis in original).

The crux of Appellants' argument is that they are entitled to the qualified immunity defense because Appellees cannot satisfy the first Saucier element: Appellees fail to establish a constitutional violation of due process (procedural and substantive) and equal protection. Appellants are effectively asking the Court to determine whether the Bankruptcy Court erred in denying Appellants summary judgment on the merits of Appellees'

underlying federal claims as a matter of law. (Appeal Br., at 20-42.) Although Appellants argue the Appeal is rooted in the Bankruptcy Court's denial of summary judgment based on qualified immunity, the Appeal reads more like an appeal of the denial of summary judgment, which is an interlocutory order, and not "immediately appealable because such a decision is not a final judgment." Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 760 (2d Cir. 2003) (internal quotation marks and citation omitted).

Nonetheless, Appellants allege at least some qualified immunity issues that present pure issue[s] of law over which this Court may properly exercise jurisdiction: that Appellees were not deprived of any constitutionally protected property interests and that the relevant law was not clearly established. Cowan, 352 F.3d at 760; see also Terebesi v. Torreso, 764 F.3d 217, 229-30 (2d Cir. 2014). However, by accepting Appellees' version of the facts, Appellants are not entitled to summary judgment as a matter of law because resolution of these issues turn on conflicting facts. Cowan, 352 F.3d at 764.

Appellants' remaining arguments depend on Appellants' "versions of contested facts, or on the district court's determinations of evidentiary sufficiency--questions over which" this Court has no jurisdiction. Terebesi, 764 F.3d at 230.

III. <u>The Merits of Appellants' Appeal</u>

The scope of this Appeal is limited to the Bankruptcy Court's denial of summary judgment to the Appellants on the ground of qualified immunity.[13]  In support, Appellants argue that they are entitled to qualified immunity because (1) Appellants did not deprive Appellees' of any constitutionally protected property right (Appeal Br. at 20-24); (2) Appellants did not deprive Appellees of substantive due process because their conduct was not "arbitrary or irrational" or "Intentional" (Appeal Br. at 34-37); (3) Appellants did not violate Appellees' equal protection rights because there was no one "similarly situated" and the decision to post the placard was not based on "impermissible considerations" (Appeal Br. at 37-42); (4) Appellants did not violate any "clearly established" rights (Appeal Br. at 42-47); and (5) the determination to post the placard was objectively reasonable (Appeal Br. at 47-51).

---

[13] The Court will disregard Appellants' complaints of error regarding the Bankruptcy Court's finding that Appellees lack standing to assert their claims (Appeal Br., at 24-27), and any other issues beyond the scope of this appeal. <u>See</u> <u>e.g.</u>, <u>Selig v. Druckman Law Grp. PLLC</u>, No. 17-CV-4510, 2018 <u>WL</u> 3973013, at *4 (E.D.N.Y. Aug. 20, 2018).  Further, Appellants do not argue that their standing argument is "inextricably intertwined" or that resolution of the standing issue is "necessary to ensure meaningful review" of the Bankruptcy Court's ruling on qualified immunity thus, the Court has no jurisdiction over this portion of the Appeal.  <u>Jones v. Parmley</u>, 465 F.3d 46, 64-65 (2d Cir. 2006) (internal quotation marks and citation omitted).

Appellees oppose the Appeal primarily arguing that this Court lacks jurisdiction to hear the Appeal and that, among other things, (1) federal due process requirements cannot be "avoided merely because a state code or municipal statute does not expressly spell out such requirements" (Appeal Opp., D.E. 30, at 33); (2) "due process requires that a mortgagee be put on notice whenever the value of its security interest is 'severely diminished' by a deprivation (Appeal Opp., at 38-39 (citations omitted)); and (3) "even under the [Appellees'] version of the facts" Appellants would not be entitled to qualified immunity. (Appeal Opp., at 26-28.)

In addressing the merits of Appellants' appeal, the Court "continue[s the] jurisdictional inquiry." Terebesi, 764 F.3d at 230.

A.    Procedural Due Process

1.    Deprivation of a Protected Property Interest

Appellants argue that Appellees' procedural due process claim[14] fails and they are entitled to qualified immunity, because

---

[14] In arguing that Appellees were not deprived a constitutionally protected property interest, Appellants cite Mennonite v. Board Missions v. Adams, 462 U.S. 791, 103 S. Ct. 2706, 77 L. Ed. 2d 180 (1993), First Nat'l Acceptance Co. v. City of Utica, 26 F. Supp. 3d 185, 193-95 (N.D.N.Y. 2014), Fusco v. State of Connecticut, 815 F.2d 201, 206 (2d Cir. 1987), and Zipperer v. City of Fort Myers, 41 F.3d 619, 623 (11th Cir. 1995). (See Appeal Br., at 20-24.) Appellants' citations direct the Court to discussions on whether state actors violated the Fourteenth Amendment by failing to provide proper notice and due process.

"Appellees were not denied any constitutionally protected property interest or right as a result of any actions taken by Appellants in posting and maintaining the Placard." (Appeal Br., at 20-24.)

The Bankruptcy Court found "[a] mortgagee has a legally protected property interest in the mortgaged premises for due process purposes" and that "the process [ ] should be measured under the Town Code." See Bankr. Decision, D.E. 16-2, at 19, 25-26 (citing Mennonite, 462 U.S. 791, 103 S. Ct. 2706 and First National Acceptance, 26 F. Supp. 3d 185. Appellants do not specifically contest that a mortgagee has a constitutionally protected property interest in a mortgaged property. However, in a somewhat unclear fashion, Appellants argue that the Bankruptcy Court erred in finding that Appellees were deprived a constitutionally protected property interest because Appellants' conduct did not lead to "(1) the complete extinguishment or nullification of a mortgagee's security interest, or (2) an immediate, severe and utter diminishment of the value of the security interest." (Appeal Br., at 23.) Appellees respond that relevant authority recognizes that "due process requires that a mortgagee be put on notice whenever the value of its security

---

It is not entirely clear whether Appellants intend their arguments to also apply to a property interest protected by substantive due process. Thus, the Court limits its inquiry to whether Appellees were deprived a property interest entitling Appellees to procedural due process.

interest is 'severely diminishe[d]' by a deprivation."[15]  (Appeal

Opp., at 38-39.)

According to Appellants, <u>Mennonite</u> and <u>First National</u>,

relied on by the Bankruptcy Court, stand for the proposition that

a mortgagee is not deprived a constitutionally protected property

interest unless "the placarding of the [Property] . . . caused the

utter and complete destruction or extinguishment of BFCU's secured

interest in the [Property]."  (Appeal Br., at 22.)  Appellants

argue, therefore, that because Appellees' secured interest was not

"complete[ly]" extinguished, Appellees were not deprived of a

constitutionally protected property interest.  (Appeal Br., at

23.)

The Court does not find that <u>Mennonite</u> and its progeny

require the "utter and complete destruction or extinguishment of

[Appellees'] secured interest in the [Property]" to establish the

deprivation of constitutionally protected rights.  (Appeal Br.,

D.E. 15, at 22.)  Rather, the Supreme Court held that "a mortgagee

clearly has a legally protected property interest" and is "entitled

to notice" where an action "severely diminishes the value of the

---

[15] In their brief below, Appellees argued, without citation, that
"[i]t is incontrovertible that [Appellees] had a cognizable,
constitutionally-protected, property interest in the [Property],
as both the holder of the first mortgage on the [Property] and
as the holder of a first priority lien on substantially all the
assets of the catering business operated at the [Property] by
Joe's Friendly."  (Summ. J. Opp., 16-AP-8035, at 21.)

mortgaged property." Mennonite, 462 U.S. at 798; First Nat'l, 26 F. Supp. 3d at 196. The question, therefore, is whether the decision to post the placard "severely diminish[ed]" the value of the Property. If the answer is "yes," then Appellees were entitled to notice and an opportunity to be heard.

While Appellants appear to argue a "temporary" deprivation cannot establish a deprivation of a constitutionally protected property interest, (See Appeal Br., at 23-24), the Supreme Court has held that "a temporary deprivation of property is sufficient for due process purposes." Bray v. City of N.Y., 346 F. Supp. 2d 480, 489 (S.D.N.Y. 2004) (citing Connecticut v. Doehr, 501 U.S. 1, 12, 111 S. Ct. 2105, 2113, 115 L. Ed. 2d 1 (1991)); Fuentes v. Shevin, 407 U.S. 67, 85, 92 S. Ct. 1983, 1996, 32 L. Ed. 2d 556 (1972) (it is "well settled that a temporary, nonfinal deprivation of property is nonetheless a 'deprivation' in the terms of the Fourteenth Amendment") (citations omitted); Krimstock v. Kelly, 306 F.3d 40, 51-52 (2d Cir. 2002); United States v. Monsanto, 924 F.2d 1186, 1192 (2d Cir. 1991) (holding that a "temporary and nonfinal . . . removal is, nonetheless, a 'deprivation of property' subject to the constraints of due process") (citations omitted); cf. Ceara v. Gilboy, No. 13-CV-6673, 2016 WL 5661740, at *2 (W.D.N.Y. Spt. 30, 2016) (analyzing de minimis deprivation of property interest in physical property).

Appellants do not stipulate to any facts, thus review is limited to facts "that the [Appellees] allege[ ] are true, or on the facts favorable" to the Appellees. Bolmer, 594 F.3d at 141. The Court cannot, based on the record favorable to Appellees, determine whether Appellees were deprived of a constitutionally protected property interest as a matter of law. Rather, there are questions of material fact as to whether the decision to post the placard "severely diminished" the value of the Property and whether Appellees' "use of [the Property was] so drastically regulated [by the Town and Appellants] as to destroy its value." BAM Historic Dist. Ass'n, 723 F.2d 233, 237 (2d Cir. 1983). Moreover, there are material issues of fact as to whether the Property was "effectively condemned" for a period of time thereby "severely diminish[ing]" the value of the mortgaged Property.[16] (See Bankr. Decision, at 2.)

---

[16] While Appellants correctly point out that a "mere decline in property value" does not support a Fourteenth Amendment deprivation claim, (Appeal Br., at 21), Appellees do not only argue a "mere decline in property value." Cf. BAM Historic, 723 F.2d at 237 (a "decline in property values has not been recognized as implicating the Fourteenth Amendment's due process clause.") Appellees also argue that the placard, which was posted for approximately seventeen months, effectively condemned the Property and prevented Appellees from entering the Property to perform necessary repairs and from showing the Property to real estate brokers and prospective purchasers. (Appellees' Counter-Stmt., at ECF p. 57.)

Accordingly, Appellants are "not entitled to judgment as a matter of law on the [ ] issue of whether a [procedural due process] constitutional violation occurred," making "summary judgment inappropriate." Cowan, 352 F.3d at 763.[17]

### 2. Clearly Established Law

#### a. Was the Law Clearly Established?

The Bankruptcy Court denied Appellants summary judgment on the basis of qualified immunity because it could not "find at this stage of the proceedings that the Individual [Appellants'] actions did not violate a 'clearly established' right, or that their actions were 'objectively reasonable.'" (Bankr. Decision, at 42.)

Appellants argue that the Bankruptcy Court erred in applying the Town Code, and not the NYPMC, when determining whether Appellants violated a "clearly established" right. (Appeal Br., at 42, 44-47.) Appellants argue that in posting the placard, they relied on the NYPMC which permits the Town to placard a property

---

[17] Appellants also argue that Appellees' procedural due process claims fail as a matter of law because Appellees failed to exhaust post-deprivation remedies. (Appeal Br., at 30-33.) Appellants do not directly appeal the denial of summary judgment on the basis that Appellees failed to exhaust post-deprivation remedies. However, the Court lacks jurisdiction to decide this portion of the Appeal because Appellants argue the sufficiency of the evidence favors summary judgment on this issue (see e.g., Appeal Br., at 32) and because the Bankruptcy Court found that material facts are "very much" in dispute, including whether Appellants' conduct was "random and/or unauthorized" (Bankr. Decision, at 33-34).

without notice when the subject property is deemed "unsafe" or "unfit for human occupancy." (Appeal Br., at 28-29, 43-47.) According to Appellants, the decision to post the placard without notice comports with the NYPMC because it was made "after [ ] receiv[ing] [ ] engineering reports calling into question the structural integrity of the Thatched Cottage seven days before it was posted." (Appeal Br., at 44.)

The Second Circuit has "repeatedly held" that "a state statute does not serve as 'clearly established law' for purposes of qualified immunity" because "a violation of state law does not per se result in a violation of the Due Process Clause." Tooly, 919 F.3d at 172-73 (citing Brown v. City of N.Y., 798 F.3d 94, 100 (2d Cir. 2015)). "To determine whether a violation of state law overcomes federal qualified immunity, then, the court must determine whether the conduct that violated the state statute also violates clearly established federal law, and this is a distinct and separate inquiry." Id. at 173. Consequently, a party that violates the Town Code, or the NYPMC, does not necessarily violate clearly established federal law. Thus, reliance solely on the Town Code or the NYPMC as the relevant "clearly established right" is legal error.[18] See id.

---

[18] The Bankruptcy Court's reliance on the Town Code was harmless to the extent that the Bankruptcy Court determined that Appellees were deprived a constitutionally protected property interest and that the Town Code comported with Due Process

Appellants incorrectly argue that there is no "clearly established" law because the Supreme Court and Second Circuit have never addressed whether "[A]ppellants would violate a mortgagee's rights if they placarded an already closed and vacant 'unsafe' building based on licensed engineers' reports stating that the building was unsafe without conducting a prior inspection." (Appeal Br., D.E. 15, at 43.)  To the contrary, the "clearly established" law here is a mortgagee's right to notice prior to state conduct that "severely diminish[es]" the value of the mortgaged property. See discussion, supra.  It necessarily follows that if Appellees' were deprived a constitutionally protected property interest, which the Court does not now decide, Appellees were entitled to procedural due process.  Accordingly, the Court finds the import of Mennonite, decided in 1993, and its progeny "clearly established" at the time of the alleged violation in 2014.

> b.  Were Appellants Objectively Reasonable?

The determination of whether Appellants violated "clearly established" law therefore turns on whether it was "objectively reasonable" for Appellants to believe that their conduct did not violate Appellees' clearly established rights. The Court agrees with the Bankruptcy Court and finds that questions of material fact exist as to whether it was reasonable for the

---

requirements and provided the proper "process" to follow prior to posting the placard.  (Bankr. Decision, at 19.)

individually-named Appellants to conclude, in light of then existing law, that their conduct was lawful.[19]  (See Bankr. Decision, at 41-42.)

As such, summary judgment to Appellants on qualified immunity cannot be decided as a matter of law.  It follows that the Bankruptcy Court's denial of summary judgment to Appellants on the basis of qualified immunity is AFFIRMED.

B.    Substantive Due Process

The Bankruptcy Court denied Appellants summary judgment on Appellees' substantive due process claim because "there are material facts in dispute as to whether [Appellants' conduct] were arbitrary or irrational or motivated by bad faith."  (Bankr. Decision, at 35-36.)  The Bankruptcy Court relied on Cine SK8 v. Town of Henrietta, 507 F.3d 778 (2d Cir. 2007) to conclude that "[t]he multitude of alleged procedural irregularities (i.e., failing to give notice to anyone with a legal interest in the property, failing to schedule a hearing, relying upon unverified reports, failing to inspect, etc.), and the record . . . suggests that [Appellants] may have been motivated more by a desire to

_____

[19] For example, whether Appellants relied on the NYPMC, the Town Code, or any other law, and whether that reliance was reasonable, prevents the Court from deciding "objective reasonableness" as a matter of law.  These examples, of course, are not intended as an exclusive list of all relevant and material factual disputes.

address Colamussi's agenda than concern for public safety."
(Bankr. Decision, at 35.)

Appellants argue that the Bankruptcy Court erred in
denying summary judgment on qualified immunity grounds with
respect to substantive due process because (1) Appellants had
authority "to placard the Thatched Cottage," rendering the
Bankruptcy Court's reliance on <u>Cline</u> inapplicable (Appeal Br.,
36); (2) "Appellants cannot show" that there was "anything
arbitrary or irrational about placarding the [Property]" and there
is no evidence that "any of the Appellants intentionally deprived
Appellees of their rights by placarding the [Property]" (Appeal
Br., at 34); and (3) the "placarding was not even arguably
'outrageous' or a 'gross abuse'" (Appeal Br., at 37).

Despite Appellants' attempt to couch this portion of the
Appeal as only involving "questions of law," these arguments
"really pertain to the [Bankruptcy Court's] finding that there
exists a material dispute of fact," which precludes a grant of
qualified immunity on summary judgment. <u>See</u> <u>Marrero for Estate of</u>
<u>Morales v. Cote</u>, 756 F. App'x 79, 80 (2d Cir. 2019) (citing <u>Salim</u>
<u>v. Proulx</u>, 93 F.3d 86, 91 (2d Cir. 1996)). Indeed, the Court finds
that there are material issue of fact as to (1) whether Appellees
were deprived a property right; (2) whether the determination to
post the placard was "tainted" by either (a) preferential
treatment to Colamussi or (b) "fundamental procedural

38

irregularity--each of which independently, or in combination, would be sufficient to demonstrate" that Appellants' "actions were arbitrary or irrational" (see Cine, 507 F.3d at 790); and (3) whether the facts show that Appellants were merely negligent, which, according to Appellants, is insufficient to sustain a claim based on a violation of substantive due process (Appeal Br., at 37). Thus, disputed facts bar this Court from determining whether Appellants are entitled to a qualified immunity defense with respect to Appellees' substantive due process claim. Accordingly, this portion of the Appeal is DISMISSED for lack of jurisdiction.

C.    Equal Protection

Appellants also argue that the Bankruptcy Court erred in denying Appellants summary judgment on qualified immunity grounds with respect to Appellees' equal protection claim because the undisputed facts show that the Property "was the only property the [Appellants] had ever placarded for which they had licensed engineers' reports [ ] stating that the [P]roperty was unsafe." (Appeal Br., at 38-39) (emphasis in original).

The Bankruptcy Court rejected Appellants' arguments finding the "'similarly situated' standard need not be established by proof that the Town had in the past placarded a building based on third party engineering reports--a situation created and defined solely by the [Appellants]." (Bankr. Decision, at 37.) The Bankruptcy Court observed that "[d]efining the class so

narrowly virtually ensures that there will be no others similarly situated." (Bankr. Decision, at 37.) Appellants do not explain how the Bankruptcy Court's determination regarding the "similarly situated" standard was "erroneous" nor do they point to undisputed facts to support this conclusion. (Bankr. Decision, D.E. 16-2, at 37.) Nonetheless, based on the record before the Court, summary judgment is inappropriate because it cannot be decided as a matter of law that that there was no one individual, or no entity, that was "similarly situated." See Harlen Assoc. v. Inc. Vill. of Mineola, 273 F.3d 494, 499 n.2 (2d Cir. 2001) (noting that as a general rule the "similarly situated" determination is "a factual issue that should be submitted to the jury").

Appellants also argue that the facts do not show that the Property was "placarded because of 'impermissible considerations.'" (Appeal Br., D.E. 15, at 40.) In support, Appellants cite "undisputed" facts to show that "there is no issue of material fact concerning [Appellants'] reasons for [P]lacarding the [Property]." (Appeal Br., at 42.) However, the Court finds that Appellants arguments turn on a review of Appellants' "versions of contested facts, or on the district court's determinations of evidentiary sufficiency--questions over which [there is] no jurisdiction." Terebesi, 764 F.3d at 229-30.

Therefore, "the availability of qualified immunity cannot now be determined as a matter of law" and the Court lacks

jurisdiction over this portion of the Appeal. <u>Cohn v. New Paltz</u>
<u>Cent. Sch. Dist.</u>, 171 F. App'x 877, 880 (2d Cir. 2006).

CONCLUSION

For the foregoing reasons, the Bankruptcy Court's
decision denying Appellants summary judgment on the basis of
qualified immunity is AFFIRMED, the Bankruptcy Court's decision
denying Appellants summary judgment on Appellees' substantive due
process and equal protection claims are DISMISSED for lack of
jurisdiction, and Appellants' Stay Motion is DENIED as MOOT.


SO ORDERED.



/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


Dated:    November  25 , 2019
          Central Islip, New York